GREENLEE, Appellant, v. GREENLEE, Respondent.

*April 1—April 28, 1964.*

For the appellant there was a brief by *Louis G. Nagler* of Balsam Lake, attorney, and *Doar & Knowles* of New Richmond of counsel, and oral argument by *James A. Drill* of New Richmond.

For the respondent there was a brief and oral argument by *George W. Peterson* of Balsam Lake.

CURRIE, C. J. This appeal presents two issues as to whether the trial court abused its discretion: (1) In changing the custody of six-year-old Terri from plaintiff mother to defendant father; and (2) in denying plaintiff's application for an allowance of attorneys' fees and disbursements in connection with the appeal.

## Change of Custody.

In order to resolve the issue of abuse of discretion with respect to the change of custody it is necessary to review the pertinent evidence.

Plaintiff is twenty-five years old. Since the divorce from defendant she has resided in St. Paul, Minnesota, and during most of the intervening period she has been employed there. Her second husband, Irving Andren, is also employed there. Although the divorce decree awarded custody to her, the actual custody has been in her parents, Mr. and Mrs. Lind, who reside in the same school district in Polk county as does defendant. Because of plaintiff's employment and marital difficulties with Andren, it was not practical for plaintiff to take Terri to St. Paul to reside with her. She and Andren lived apart from October, 1961, to March, 1963; they then became reconciled and resumed living together. They purchased a two-bedroom 50-foot house trailer and plaintiff was residing in this trailer at the time of the hearing, August 30, 1963, on the change-of-custody petition. A considerable balance is still owing on the purchase price. Plaintiff and Andren again separated on August 11, 1963, and on August 20, 1963, plaintiff was served with a summons and complaint in a divorce action instituted by Andren. At the time of the instant hearing plaintiff was pregnant.

The evidence discloses that plaintiff is devoted to Terri and has spent most weekends since the divorce at her parents' home in order to be with her. Over a one-year period, 45 weekends were so spent at her parents' home. Plaintiff has bought all of Terri's clothes in addition to turning over to her parents the $25 per month support-money payments made by defendant. In addition some years ago she started a savings account for Terri, to which she made deposits from time to time, in which the balance is now $232.52.

Defendant is a forty-seven-year-old farmer. He and his present wife, Ruth, reside on a farm in Polk county owned by his parents who live in Oregon. Defendant and his wife own the adjoining farm, which defendant also farms. In all, defendant has 220 acres under cultivation, has a herd of 40 milk cows, and has a net income of $750 per month. Mr. and

Mrs. Greenlee live in a large four-bedroom home with modern conveniences. The only other occupant of the house is a sixteen-year-old boy who helps with the farm work. During the school year this youth attends school. Defendant was married once before and divorced.

Defendant has exercised his rights of visitation to see Terri. Since she has reached an age which would warrant her being away from the Lind home overnight, defendant and his present wife have called for her and taken her to their home for overnight visits. During the past summer defendant or his wife have frequently called for Terri on a Monday afternoon and then returned her to the Lind home on Tuesday evening. Terri has enjoyed being with her father.

Ruth Greenlee, defendant's present wife, is forty-three years old. She was married twice before. Both marriages ended in divorce, she having obtained the divorce in each instance. Mrs. Greenlee has two children by her first marriage, both of whom are now adults. No children were born of the second marriage. On weekends she has part-time employment as a waitress. Her working hours on Fridays and Saturdays are from 7 in the evening until 1 in the morning and on Sundays from 3 in the afternoon until 9:30 in the evening. Defendant, however, will be at home during these hours. Ruth Greenlee testified that she likes Terri and would be glad to have her in their home.

Mr. Lind, plaintiff's father, is fifty-nine years old and a carpenter who, on the average, works six days a week, ten months of the year. He usually employs two men. Mrs. Lind is fifty-seven. Both are in good health. They have a comfortable home and have provided Terri with good care during the years that she has resided with them and naturally desire that Terri continue to reside with them. The Linds have one other child besides plaintiff, a son, who attends the University of Minnesota. Mr. Lind, in 1957, established a savings account which stands in the joint names of Mrs. Lind, Terri,

and himself in which there is now a balance of $3,961.41. At the time of hearing, Terri was about to commence her first year of school.

This court has repeatedly held that the matter of custody of children in divorce actions is a matter peculiarly within the "jurisdiction" [1] of the trial court, who is in a much better position to determine where the best interests of the children lie than is an appellate court. *Patrick v. Patrick* (1962), 17 Wis. (2d) 434, 439, 117 N. W. (2d) 256; *Bliffert v. Bliffert* (1961), 14 Wis. (2d) 316, 319, 111 N. W. (2d) 188; *Brown v. Brown* (1960), 9 Wis. (2d) 322, 327, 101 N. W. (2d) 48. In contests such as this which relate to custody the welfare of the child is the controlling consideration. *Bliffert v. Bliffert, supra,* at page 320.

The trial court has made a specific finding that the best interests and general welfare of Terri will be promoted by a change of her care and custody to the defendant father, subject to reasonable visitation rights of the plaintiff mother. On this record we are unable to hold that this finding is against the great weight and clear preponderance of the evidence.

Under the order changing custody, Terri will be assured of living in the home of one of her parents, her father's. Heretofore, she has been denied this, seeing her mother only on most weekends, and being with her father only when he exercised his visitation privileges. In general, maternal custody is considered to be in the best interests of young children. While this is not a rule of law it is one element to be considered. *Bohn v. Bohn* (1962), 16 Wis. (2d) 258, 262, 114 N. W. (2d) 423. However, as the trial court rightly pointed out, plaintiff's unsettled circumstances at time of hearing prevented her from having actual custody of Terri while residing

[1] The word "jurisdiction" is not used here in its customary sense of the legal power to hear and determine such issue, but rather as a sphere of authority or discretion.

in St. Paul, and there was no likelihood of this situation changing in the near future. The transfer of custody from the Lind home to that of defendant is unlikely to cause any psychological or emotional disturbance in Terri because she has been accustomed to staying overnight in her father's home, and enjoys being with her father.

The order changing custody grants reasonable visitation rights to plaintiff without spelling them out. These visitation rights would ordinarily entitle plaintiff, when she visits her parents on weekends, to take Terri to the Lind home overnight, as was the case with defendant when plaintiff had custody. In addition it would appear to be in the best interests of Terri that she continue to enjoy fairly close relationships with her maternal grandparents who have been so kind to her, and the change in custody will not preclude this.

Counsel for plaintiff contends that there has been no substantial change in circumstances since the entry of the original divorce decree which would authorize the trial court to have changed Terri's custody. They point out that it is an abuse of discretion to order a change in custody unless there has been a substantial change in circumstances and cite *Hill v. Hill* (1950), 257 Wis. 388, 391, 43 N. W. (2d) 455. The remarriage of the defendant father, however, is such a substantial change in circumstances. *Brown v. Brown, supra.* See also 2 Nelson, Divorce and Annulment (2d ed.), p. 321, sec. 15.40. Furthermore, the divorce decree awarded custody to plaintiff, but actually custody has been in her name only while actual custody has been in the maternal grandparents.

We conclude that there was no abuse of discretion in the county court changing custody of Terri to defendant.

*Disallowance of Attorneys' Fees and Disbursements.*

The county court's memorandum opinion states the reasons why he denied plaintiff's application to require defendant

to pay a sum to cover attorneys' fees and disbursements on the appeal. The first, and principal reason advanced, was that there was little likelihood of a successful appeal. The second, and subsidiary, reason assigned was that the Linds rather than plaintiff were the ones who were the most interested in prosecuting an appeal, and they had sufficient financial means to pay the expenses of such appeal. There is nothing in the record to disclose the correctness of this latter assumption, and we accord it no weight in arriving at our decision on this issue.

The allowance or disallowance of an application to require a defendant husband to pay a sum to cover attorneys' fees and disbursements of plaintiff wife in appealing from an order affecting custody or support of a minor child lies within the sound discretion of the trial court. Unfortunately, however, sec. 251.431, Stats. 1961, provides no guidelines for the exercise of the trial court's discretion in this respect.

Our holding in *Peck v. Peck* (1956), 272 Wis. 466, 472, 76 N. W. (2d) 316, 56 A. L. R. (2d) 1202, in a somewhat-analogous situation, was that it would be an abuse of discretion to refuse such an allowance if the wife was without funds to prosecute the appeal where a close question was presented. One of the elements to be considered in making such an allowance in divorce actions generally is whether reasonable ground exists to support a belief that the appeal will be successful. *Valluzzo v. Valluzzo* (1926), 104 Conn. 152, 132 Atl. 406; *Beczek v. Beczek* (1960), 359 Mich. 677, 103 N. W. (2d) 355; *Pearson v. Pearson* (1959), 9 App. Div. (2d) 897, 194 N. Y. Supp. (2d) 999, reargument and appeal denied (1960), 10 App. Div. (2d) 582, 196 N. Y. Supp. (2d) 612; 27A C. J. S., Divorce, pp. 959, 960, sec. 221 h. See also *Friend v. Friend* (1886), 65 Wis. 412, 27 N. W. 34.

Here we have no reason to question the good faith of the appeal, but counsel for plaintiff must have realized that under

678

the past decisions of this court in change-of-custody cases there was little likelihood of success. We find no abuse of discretion in denying the application.

*By the Court.*—Orders affirmed.