WHITMAN, Respondent, v. WHITMAN, Appellant.

*June 2—June 25, 1965.*

52

For the appellant there were briefs by *Benton, Bosser, Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For the respondent there was a brief and oral argument by *Edgar E. Becker* of Appleton.

BEILFUSS, J.   Did the trial court abuse its judicial discretion by permitting the plaintiff to remove the minor children to Florida?

The statutory authority for revision of a divorce judgment insofar as custody of the children is concerned is contained in sec. 247.25, Stats.:

"The court may from time to time afterwards, on the petition of either of the parties and upon notice to the family court commissioner, revise and alter such judgment concerning the care, custody, maintenance and education of any of the children, and make a new judgment concerning the same *as the circumstances of the parents and the benefit of the children shall require.*" (Emphasis added.)

The extent of the review permitted an appellate court of orders affecting custody of children was recently well stated in *Belisle v. Belisle* (1965), 27 Wis. (2d) 317, 321, 134 N. W. (2d) 491:

"Custody matters are highly discretionary and the rule is well established that the trial court's determination will not be upset in the absence of a clear abuse of discretion. Although each case must be considered in light of all the particular facts and circumstances, guidelines have been established to aid the trial court in its decision. True, other things being equal, preference will ordinarily be given to the mother if she is not unfit. This is not a rule of law, but merely an important element to be considered; the crucial and controlling factor is the welfare of the child."

Otherwise stated, "this court relies heavily upon the determination by the trial court." *Pollock v. Pollock* (1956), 273 Wis. 233, 243, 77 N. W. (2d) 485. Especially important is the fact that the trial court is in a better position than this court to determine the best interests of the children, *State ex rel. Hannon v. Eisler* (1955), 270 Wis. 469, 71 N. W. (2d) 376; and to see and observe the parties and the way in which they conduct themselves. *Brown v. Brown* (1960), 9 Wis. (2d) 322, 101 N. W. (2d) 48; *Pollock v. Pollock, supra; Greenlee v. Greenlee* (1964), 23 Wis. (2d) 669, 127 N. W. (2d) 737.

The overriding rule in custody disputes between divorced parents, assuming that neither has been found unfit, is that the best interests of the minor child shall dictate to whom custody shall be awarded.

In this instance the issue is not which parent shall have custody but whether the mother can remove them from the state.

In *Peterson v. Peterson* (1961), 13 Wis. (2d) 26, 28, 108 N. W. (2d) 126, we stated:

"The majority of the cases deciding this point support the rule that if the parent who has custody of a child has good reason for living in another state and such course of action is consistent with the welfare of the child, the courts will permit the removal. See Annos. 154 A. L. R. 558, and 15 A. L. R. (2d) 468.

"Generally, the same considerations which determine custody of children are applied to the question of removal of children out of the state. The controlling consideration is the welfare of the child and it has often been said by this court that the determination of that welfare is primarily the task of the trial court and, except where there is a clear abuse of discretion, the trial court's order should prevail. *Smith v. Smith* (1957), 1 Wis. (2d) 174, 83 N. W. (2d) 672; *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. (2d) 878."

From the record and the memorandum opinion of the trial court, it appears that the physical facilities for the maintenance of the children, their educational opportunities, and their moral and religious instruction and supervision would be substantially the same in Fort Myers, Florida, as in Appleton, Wisconsin.

Two further approbative considerations in this case are that the children should have the day-by-day love, care, discipline, and protection of their mother, and should be able to know their father and have the benefit of his love and guidance through adequate visitation.

Under the order of the court, permitting the mother to remove the children to Florida and providing for generous rights of visitation, these objectives can be accomplished. This is not a case where the interests of the children would be best served by removal from the state because of economic, health, educational, moral, or emotional reasons.

The issue then becomes, under these circumstances, is it fair to impose additional burdens of time, distance, and expense upon the father in the exercise of his *right* of visitation in order to accommodate the mother's desire to move to Florida.

A divorced man or woman is free to move about and pursue his or her life and living without restraint from his former spouse; as divorced parents of minor children they may be required to curtail these liberties or forfeit some of their rights to custody or visitation, as the case may be, consistent with the best interests of the children and the rights of the other parent.

The trial court concluded that plaintiff wanted to move to Florida to continue to reside near her parents; that this desire was natural and not deplorable; that the children should be with the mother and that she should be permitted to take the children to Florida. The court further concluded that visitation rights of the defendant in Florida and Wisconsin would not unduly burden the defendant either as to the time or expense involved.

As stated above, "the trial court's determination will not be upset in the absence of a clear abuse of discretion." [1]

The same trial judge heard the divorce action. He had the benefit of his recollections of the conduct of the parties toward each other insofar as it might affect the children; he observed the parties and their witnesses and was charged with determining the credibility of the witnesses and the weight of the testimony. The trial court is in a superior

---

[1] *Belisle v. Belisle, supra.*

position to evaluate the conflicting interests of the parties and the children; the law, therefore, imposes on the trial court the responsibility of evaluating the factual proof and applying the law. This court cannot interfere unless there is an erroneous application of the law or a clear abuse of discretion in applying the facts to the law.

The plaintiff's proof is meager. It might well be possible that some members of the majority would join with our dissenting brothers if we would have heard the petition as an original matter. We cannot, however, conclude that the trial court abused its discretion when it determined that the plaintiff's desire to move was for a proper purpose and beneficial to her, that it was not detrimental to the children, and that under the circumstances removal to Florida would not constitute an undue burden upon the defendant in exercising his visitation rights. The order permitting removal must be affirmed.

The defendant contends that the court prejudicially abused its discretion in refusing to order a psychiatric examination of the minor children. There is no allegation nor proof to show that the minor children were not normal physically or emotionally, or that the move to Florida could have that effect. There is no showing of an abuse of discretion in this respect.[2]

Three additional problems in this appeal, while not necessary to the opinion, are worthy of note.

After the hearing on July 7th, but before the trial court's decision on August 17th, the plaintiff filed several affidavits tending to show conduct on the part of the defendant that was either detrimental to the children or disconcerting to the plaintiff. The defendant filed an affidavit of general denial. The trial judge advised the parties he would consider them insofar as they were material. The record does not reveal in what respect, if any, these affidavits were considered. We

[2] *Peterson v. Peterson, supra.*

assume they formed no part of the trial court's finding and this opinion disregards whatever impact they might have.

The plaintiff contends that these affidavits may be considered as a part of the proof by virtue of sec. 269.32 (2), Stats.[3]

While we do not say that an affidavit filed subsequent to a hearing in a custody matter cannot be considered under any circumstances, we do disapprove of materially disputed facts being presented in this manner. (In fairness to counsel we must report he did have his witnesses present and offered to produce them.)

The quotation that follows goes beyond a fair criticism of the record in this case, but illustrates the importance of sworn testimony as contrasted to affidavits in child-custody cases:

"The plaintiff further contends that the trial court, in determining this controversy, proceeded in an unwarranted manner, in that no hearing, such as ought to have been had in so important a matter, was in fact had. The whole hearing was conducted quite informally and without an opportunity to make a record or without a record in fact being made. We think the procedure adopted by the court in this important matter is justly subject to criticism. Judgments in divorce actions should not be so modified as to the custody of a child or children. In such a case where a contest exists and especially where a hearing is demanded, a hearing should be given. The witnesses should be sworn and an opportunity given to cross-examine them. The testimony should be taken by the reporter so that a record may be made in case either of the parties desires to appeal and have such order reviewed. We have not before us in this appeal any record of what was said by the attorneys, what informal conversations were had between the court and the witnesses, what testimony, if any, was given, and what in fact the court acted upon. In a mat-

---

[3] ". . . The moving party may be allowed to present upon the hearing, records, affidavits or other papers, not served with the motion papers, but only upon condition that opposing counsel be given reasonable time in which to meet such additional proofs, should request therefor be made."

ter of such vital concern to the parties and to the child whose interests are of paramount importance, a record should be made to the end that a party may not be denied an effective appeal." *Smith v. Smith* (1932), 209 Wis. 605, 610, 245 N. W. 644.

The plaintiff's order to show cause to commence these proceedings demands that the defendant show cause "why an order should not be entered herein confirming the change of residence of the children of the parties. . . to the State of Florida."

It is the plaintiff's position that because the judgment awarding custody of the children to her did not restrain her from removing the children from the state she was at liberty to do so without permission of the court.

The family court, by virtue of sec. 247.25, Stats., is obligated to retain jurisdiction for custody purposes. The minor children are, in a sense, wards of the court. Even though the courts of our sister states accord "full faith and credit" to the judgments and orders of the courts of this state, the enforcement of those orders may become, as a practical matter, cumbersome and prohibitively expensive.

We subscribe to the statement in 2 Nelson, Divorce and Annulment (2d ed., 1961 rev.), p. 267, sec. 15.20:

"A party who has been awarded the custody of a minor child should procure leave of court, by an order properly entered in the cause in which the custody was awarded, before taking [the] child out of the state."

Our final comment deals with the order permitting the plaintiff to remove the children to Florida pending the appeal. The defendant, by order to show cause, asked that the order amending judgment permitting removal of the children be stayed pending this appeal. The court denied the motion to stay but ordered the plaintiff to post a bond in the amount of $1,500 as security to assure the return of the

children *to* Wisconsin in the event the order permitting removal was reversed. Pursuant to these orders the children were removed and have been in Florida since September, 1964.

Except in those instances where the trial court finds it would be contrary to the best interests of the children, or unduly restrictive or detrimental to the removing parent, we deem it advisable for the trial court *to* stay the execution of the order permitting the removal of the minor children pending the appeal from that order when an appropriate motion is made. This is because of the disrupting effect it may have upon the children if the order is reversed.

*By the Court.*—Order affirmed.

HALLOWS, J. (*dissenting*). In my opinion the trial court clearly abused its discretion in allowing Mrs. Whitman to remove the children to Florida for no better reason than that she wanted to be near her parents who contemplated moving from Wisconsin to Florida. When the divorce was granted and the custody of the children was awarded to the mother, she was given the home in Appleton where the children and their father could enjoy at least weekend association. The burden of proof to change this arrangement rests upon Mrs. Whitman to show the well-being of the children will be better served by the removal of the children to Florida. *Greenlee v. Greenlee* (1964), 23 Wis. (2d) 669, 127 N. W. (2d) 737; *Anderson v. Anderson* (1959), 8 Wis. (2d) 133, 98 N. W. (2d) 434; 27B C. J. S., Divorce, p. 483, sec. 313. This she has failed to do. The most the evidence shows is that in respect to economic and educational matters the interests of the children were not affected, but we think more is required to justify a modification of the divorce judgment respecting the children.

The proof should show that the interests of the children are better served and promoted by the change, not merely

that their interests are not adversely affected. In *Peterson* v. *Peterson* (1961), 13 Wis. (2d) 26, 108 N. W. (2d) 126, we allowed a mother to remove a child to Minnesota but it was pointed out that such removal was for the best interests of the child. Likewise, in *Anderson v. Anderson* (1959), 8 Wis. (2d) 133, 98 N. W. (2d) 434, this court required children to be brought back to Wisconsin from Mexico because the health requirements for their being in Mexico no longer existed and their future would be better assured by their return to Wisconsin. In *Bennett v. Bennett* (1938), 228 Wis. 401, 280 N. W. 363, we allowed the father who had custody of the children to remove them to New York where he had secured a better job with greater opportunities, but this was on the ground that such reasons relating primarily to the parent who had custody indirectly were for the best interests of the children and would result in a benefit to them. To the same effect are *Baer v. Baer* (Mo. App., 1932), 51 S. W. (2d) 873; *King v. King* (1931), 61 N. D. 422, 237 N. W. 854; see 15 A. L. R. (2d) 432, Anno.— Custody of Child—Right of Nonresident.

No such case is presented here; the only reason advanced is that an adult woman wants to follow her parents' removal from Wisconsin. She claims she has a right to live her own life in a place conducive to her happiness and welfare. This reason illustrates one of the tragedies of all divorces—an egocentric attitude and an unwillingness to sacrifice for others. It has been rightly said the real tragedy of a divorce falls upon the helpless children of the ill-starred marriage; they are the ones who can no longer look forward to the love and security of a normal homelife and the guidance and association of both parents. Because of this fact, the law is ever zealous of their rights and requires that the dominant and paramount reason for any change in their custody be their best interests. *Greenlee v. Greenlee, supra; Block v. Block* (1961), 15 Wis. (2d) 291, 112 N. W. (2d) 923; *Bliffert*

*v. Bliffert* (1961), 14 Wis. (2d) 316, 111 N. W. (2d) 188; *Subrt v. Subrt* (1957), 275 Wis. 628, 83 N. W. (2d) 122; *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. (2d) 878.

The majority opinion pays little heed to the right of the children to emotional stability, to their rights to the association of both parents. While divorce has severed the marriage, it has not dissolved any bonds of parenthood. True, the law has not yet developed to the point where the rights of the children of divorces are recognized independently from those of the parents. We still determine children's rights in our adversary system through the enforcement of some right of a warring parent, but such an approach emphasizes too much the form in which the determination is made and tends to treat all children of a divorce as chattel. The majority opinion does not consider the effect on the children of being denied their right to the association and the companionship of their father. It is no answer to say the father is wealthy and can afford to go to Florida and his job is not so time-consuming as to make the trip a hardship. This is viewing the problem solely from the standpoint of the father. Living in Florida is not as convenient or conducive to a normal relationship between the father and his children from the children's standpoint as living in the same city.

I am authorized to state that Mr. Chief Justice CURRIE joins in this dissent.